# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person, property, or object to be tracked )*<br><br>A red 2012 Ford Explorer, bearing Wisconsin license<br>plate AML-1431, VIN: 1FMHK8D88CGA72342<br>("Subject Vehicle") | )<br>)<br>)<br>)<br>)<br>) |

Case No. 24-939M(NJ)

## TRACKING WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district;   ☐ is not now located in this district, but will be at execution;   ☐ the activity in this district relates to domestic or international terrorism;   ☐ other: _____ .

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)* ☐ using the object      ☑ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: A red 2012 Ford Explorer, bearing Wisconsin license plate AML-1431, VIN: 1FMHK8D88CGA72342  ("Subject Vehicle"), located at 2824 Crossridge Drive, Racine, Wisconsin, including any parking areas.

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by   12/21/2024   *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until   1/25/2025   *(no later than 45 days from the date this warrant was issued)*.  The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*
☑ into the vehicle described above          ☑ onto the private property described above
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)* _____ Hon. Nancy Joseph _____ and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510).  I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☑ for   30   days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 12/11/2024 @ 4:40 p.m.

*Judge's signature*

City and state:   Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

Case No.  24-851M(NJ) 1st Ext.

## Return of Tracking Warrant With Installation

1.   Date and time tracking device installed:                     _____

2.   Dates and times tracking device maintained:           _____

3.   Date and time tracking device removed:                    _____

4.   The tracking device was used from *(date and time)*:    _____

     to *(date and time)*:                                         _____ .

## Return of Tracking Warrant Without Installation

1.   Date warrant executed:                                              _____

2.   The tracking information was obtained from *(date and time)*:    _____

     to *(date and time)*:                                        _____ .

## Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.


Date:  _____            _____

                                                      *Executing officer's signature*

                                        _____

                                                     *Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>A red 2012 Ford Explorer, bearing Wisconsin license<br>plate AML-1431, VIN: 1FMHK8D88CGA72342<br>("Subject Vehicle") | )<br>)<br>)<br>)<br>)<br>)    Case No. 24-939M(NJ) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of

__21__ U.S.C. § 841;846;&843 . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A red 2012 Ford Explorer, bearing Wisconsin license plate AML-1431, VIN: 1FMHK8D88CGA72342 ("Subject Vehicle"), located at 2824 Crossridge Drive, Racine, Wisconsin including any parking areas.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TYLER OWENBY   Digitally signed by TYLER OWENBY
Date: 2024.12.10 16:21:35 -06'00'

*Applicant's signature*

Tyler Owenby, DEA SA

*Applicant's printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 12/11/2024

City and state:  Milwaukee, WI

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler F. Owenby, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of a vehicle more particularly described as a red 2012 Ford Explorer, bearing Wisconsin license plate AML-1431, VIN: 1FMHK8D88CGA72342 (hereinafter "**Subject Vehicle**")

2.      I am a Special Agent with the Drug Enforcement Administration ("DEA").  I have been so employed since July 2021 and am currently assigned to the DEA Milwaukee District Office.  As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3.      Prior to my employment with the DEA, I spent the previous five years working as an Analyst assigned to the Columbia Missouri Police Department's Vice Narcotics and Organized Crime Unit.  As part of my duties as an Analyst, I was formally trained and certified in the areas of mobile phone forensics, cell tower and phone toll analysis, and advanced open source intelligence gathering techniques.

4.      I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses.  More specifically, my training and experience includes the following:

a.      I have utilized informants to investigate drug trafficking.  Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.      I have experience conducting street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c.      I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.  I know the street values of different quantities of the various controlled substances;

d.      I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

e.      I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

f.      I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

g.      I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry.  I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846 (possession with intent to distribute a controlled substance, illegal use of a communication facility and conspiracy to possess with intent to distribute a controlled substance) have been committed, are being committed, and will be committed by Miguel RODRIGUEZ, Jose RODRIGUEZ, and others not yet identified.   There is also probable cause to believe that the location of the subject vehicle will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## <u>PROBABLE CAUSE</u>

8.     Since May 2024, the Drug Enforcement Administration (DEA) has been conducting an investigation involving Miguel RODRIGUEZ (DOB: XX/XX/2001), Jose M RODRIGUEZ (DOB: XX/XX/1979) and other known and unknown individuals, who are believed to be members of a Milwaukee-area based Drug Trafficking Organization (DTO) engaged in the distribution of Methamphetamine.

**A.     Background**

9.      In July 2024, an Undercover (UC) Special Agent with the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) was contacted by a Hispanic male later positively identified as Miguel RODRIGUEZ.  At the time, RODRIGUEZ was utilizing telephone number 414-349-6360.  In sum, according to the UC, during the initial phone contact between the UC and RODRIGUEZ, RODRIGUEZ confirmed to the UC that RODRIGUEZ could provide pound quantities of methamphetamine to the UC.

10.     Based on my training and experience, I know that a "controlled buy" is a law enforcement operation in which an informant, or in this instance, an undercover agent, purchases drugs from a target at the direction of law enforcement. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When a CS is used, she/he is searched for contraband, weapons, and money before the operation. The CS is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the CS meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents.   The CS is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction.   A sample of the suspected drugs is then field tested by the case agents for the presumptive presence of controlled substances and then placed in inventory pursuant to normal inventory procedures.  Often, the calls to the target by the CS are consensually recorded calls under the direction and control of case agents and/or made in the presence of case agents. In this case, the UC made covert video/audio recordings of the two controlled buys involving RODRIGUEZ.

11.     On August 6, 2024, the UC was in phone contact with RODRIGUEZ who was still using telephone number 414-349-6360.  In sum, according to the UC, RODRIGUEZ and the UC

agreed to meet the following day at a location in the City of Milwaukee, Wisconsin and RODRIGUEZ agreed to supply the UC with one pound of methamphetamine.

12.    On August 7, 2024, the UC met with case agents at a predetermined location and was provided with an amount of money in DEA Official Advanced Funds (OAF) to make the purchase and was equipped with a covert audio/video recording device.  Prior to the UC leaving the predetermined location, surveillance units were dispatched to the area where RODRIGUEZ and the UC had agreed to meet.

13.    RODRIGUEZ had previously communicated to the UC that RODRIGUEZ would be driving a silver Infiniti.  At some point after the UC parked at the meeting location, surveillance units in the area observed a silver Infiniti sedan with heavy front-end damage park in the area of the UC's undercover vehicle.   Around the same time the Infiniti was observed parking, surveillance units also observed a dark gray Chrysler 300 park directly behind tfhe Infiniti.  A Hispanic male, later positively identified as RODRIGUEZ, was observed exiting the rear passenger side door of the Infiniti, then walking to and entering the passenger seat of the UC vehicle.  RODRIGUEZ was then observed exiting the UC vehicle and walking to the Chrysler 300 that had pulled up.  RODRIGUEZ could be seen talking with the occupant(s) of the Chrysler through the open passenger side window for a few moments before walking back to the UC vehicle.  Once RODRIGUEZ was back inside the UC vehicle, case agents monitoring the audio being transmitted from the UC vehicle could overhear that the deal had been done.

14.    After the deal, RODRIGUEZ was observed exiting the UC vehicle and again walking back to the Chrysler which was still parked behind the Infiniti that RODRIGUEZ had arrived in.  RODRIGUEZ was observed entering the rear passenger side seat of the Chrysler, where he remained for a few minutes.  As RODRIGUEZ entered the Chrysler, the UC departed the area.

Once RODRIGUEZ exited the Chrysler, the Chrysler departed the area and RODRIGUEZ entered the rear of the Infiniti and the Infiniti departed the area. Surveillance was terminated on RODRIGUEZ at this time.

15.     Subsequent to the transaction, the UC again met with case agents at a predetermined location and handed over a gallon size Ziplock baggie that contained a crystalized substance that appeared to be methamphetamine. The suspected methamphetamine was subjected to a field test where it yielded positive results for the presence of methamphetamine. The suspected methamphetamine weighed approximately one pound. The UC stated that the UC provided the pre-recorded buy money to RODRIGUEZ while inside the UC's vehicle and RODRIGUEZ provided the UC with the baggie containing the suspected crystal methamphetamine. The UC identified a photograph of RODRIGUEZ as the person who provided the UC with this methamphetamine.

16.     On August 21, 2024, the UC again had contact with RODRIGUEZ who was still utilizing telephone number 414-349-6360. In sum, according to the UC, RODRIGUEZ and the UC agreed to meet the following day at a location in the City of Milwaukee, Wisconsin and RODRIGUEZ had agreed to supply the UC with one pound of methamphetamine and one Glock 19X handgun.

17.     On August 22, 2024, the UC met with case agents at a predetermined location and was provided with an amount of money in DEA Official Advanced Funds (OAF) to make the purchase and was equipped with a covert audio/video recording device. Prior to the UC leaving the predetermined location, surveillance units were dispatched to the area where RODRIGUEZ and the UC had agreed to meet.

18.     The UC arrived and parked the UC vehicle in the agreed upon meeting location. Shortly after the UC parked, a Hispanic male (later positively identified as RODRIGUEZ) was observed walking towards the UC vehicle and entering the front passenger seat.  Surveillance units did not observe where RODRIGUEZ had walked from.  According to the UC, once in the UC vehicle, RODRIGUEZ completed the transaction with the UC for the handgun, but informed the UC that he did not currently have the methamphetamine and they would need to travel to go pick it up.  A short time later, the UC vehicle was observed departing the area with RODRIGUEZ still inside.  Ultimately, the UC vehicle was observed parking at another location in the City of Milwaukee where RODRIGUEZ was observed exiting the UC vehicle and entering a black Ford F-250, Wisconsin Plate VE-8307.  RODRIGUEZ was observed entering the passenger side of the F-250, where he remained for approximately one minute and then was observed exiting the F-250 and walking back to the UC vehicle.  RODRIGUEZ again entered the UC vehicle for just a moment before exiting.  Case agents monitoring the audio being transmitted from the UC vehicle could overhear that the deal had been done and the UC was observed departing the area.  Surveillance was terminated on RODRIGUEZ at this time, as the UC had left RODRIGUEZ in the area where the deal had happened.

19.     Subsequent to the transaction, the UC again met with case agents at a predetermined location and handed over a clear heat-sealed bag that contained a crystalized substance that appeared to be methamphetamine.  The suspected methamphetamine was subjected to a field test where it yielded positive results for the presence of methamphetamine.  The suspected methamphetamine weighed approximately one pound.  The UC also handed over the handgun that had been purchased from RODRIGUEZ which was turned over to ATF case agents for storage and safekeeping. The UC stated that the UC provided the pre-recorded buy money to

RODRIGUEZ while inside the UC's vehicle and RODRIGUEZ provided the UC with the firearm. The UC stated that the UC then drove RODRIGUEZ to the secondary location, where RODRIGUEZ exited the UC vehicle, then returned and provided the UC with the baggie containing the suspected crystal methamphetamine. The UC identified a photograph of RODRIGUEZ as the person who provided the UC with this methamphetamine and the firearm.

20.     On August 26, 2024, the UC was contacted by RODRIGUEZ who was now utilizing telephone number 262-583-8168. The UC identified the voice of the person calling from the Target Number as RODRIGUEZ based on their prior conversations and meetings. In sum, according to the UC, RODRIGUEZ indicated to the UC that RODRIGUEZ currently had a pound of methamphetamine ready for sale and also stated to the UC that RODRIGUEZ was working on acquiring firearms, specifically "switches," which case agents understand to be machine gun conversion devices that render Glock handguns to be fully automatic.

21.     On September 10, 2024, RODRIGUEZ again contacted the UC from telephone number 262-583-8168 text message. In sum, according to the UC, RODRIGUEZ communicated to the UC that RODRIGUEZ currently had one pound of methamphetamine ready to go if the UC was interested. Specifically, the user of the telephone number 262-583-8168 (believed to be RODRIGUEZ) messaged the UC, "I got one for 32 lmk." Based on my training and experience, as well as the overall investigation, I believe this message involved RODRIGUEZ offering the UC one pound of methamphetamine for $3,200. Further, I believe that "lmk" is short for "let me know," meaning that RODRIGUEZ is asking the UC to tell RODRIGUEZ whether the UC wants the pound for that price. Further, the user of the telephone number 262-583-8168 (believed to be RODRIGUEZ) messaged the UC, "coo bro ill save you one, you gone want another toy." Based on my training and experience, as well as the overall investigation, I believe this message was

RODRIGUEZ agreeing to hold one pound of methamphetamine for the UC and asking the UC if the UC wanted another firearm ("toy"). As noted above, during a prior controlled buy, RODRIGUEZ sold the UC a Glock firearm and, in context, I believe that RODRIGUEZ is asking whether the UC wants a second firearm ("another toy").

22.     Based upon the two controlled buys, I know that RODRIGUEZ has access to pound quantities of methamphetamine because he has distributed two pounds to the UC within the past 120 days. Therefore, when RODRIGUEZ contacted the UC using telephone number 262-583-8168, in sum, to inform the UC that RODRIGUEZ is currently in possession of additional methamphetamine, I believe RODRIGUEZ's representations to be reliable. As such, I believe that RODRIGUEZ is using the telephone number 262-583-8168 to facilitate a forthcoming drug deal and that the requested historical and real time data will be essential in determining where RODRIGUEZ is storing and acquiring the drugs for distribution and identifying those with whom RODRIGUEZ communicates concerning his drug trafficking.

23.     Case agents subpoenaed T-Mobile records in an attempt to identify the listed subscriber for telephone number 262-583-8168, but to date, the subscriber's name is unknown. The return from T-Mobile did not list any subscriber name.

24.     On September 13, 2024, the Honorable Nancy Joseph, United States Magistrate Judge in the Eastern District of Wisconsin, authorized a warrant for the electronic surveillance of telephone number 262-583-8168.

25.     On September 22, 2024, the UC was contacted by telephone number 414-531-4582 (Target Number) via text message. The holder of the Target Number sent a message to the UC that said, "They told me u need sum work." The UC responded with, "Yeah whats the ticket on water" to which the Target Number responded with "3350." Based on the previous investigation

and controlled buys, case agents know that the holder of the Target Number is offering to sell one pound of methamphetamine to the UC in exchange of $3,350. As of this date, the UC and the holder of the Target Number have not negotiated a specific date to meet and conduct this purchase.

26.     On September 23, 2024, case agents provided U.S. Cellular with an administrative subpoena regarding the telephone records for the Target Number. On September 25, 2024, the results of the subpoena were returned from U.S. Cellular and showed a subscriber listed for the Target Number as "Sam Doe." Through my training and experience, I know that it is common for drug traffickers to use cellular phones listed under fictitious names to avoid detection by law enforcement. The "Subscriber Type" listed in the return showed that it was a prepaid account. I also know through my training and experience that drug traffickers also use prepaid accounts to avoid detection by law enforcement.

27.     Case agents have examined the records of telephone number 414-349-6360 which was the first number being operated by RODRIGUEZ. Between June 22, 2024 and August 27, 2024, the Target Number had 20 total contacts with 414-349-6360. Case agents believe the Target Number is being operated by a co-conspirator of RODRIGUEZ in furtherance of the conspiracy.

28.     On September 27, 2024, the Honorable Stephen C. Dries, United States Magistrate Judge in the Eastern District of Wisconsin, authorized a warrant for the electronic surveillance of telephone number 414-531-4582 (Target Number). That order expired as of October 26, 2024.

29.     On November 5, 2024, the UC again had contact with the Target Number regarding setting up a purchase of methamphetamine. The holder of the Target Number sent a text to the UC that stated, "Wat u gona need" to which the UC responded, "like I said I can move whatever long ones or short ones just not too janky ya feel me?" and then followed that message with, "What the ticket on 2 whole ones?" The Target Number responded, "But wat" to which the UC responded

"Hielo" and then "2 Ls." Hielo is the Spanish word for ice and ice is a common street term for crystal methamphetamine. The Target Number responded to the UC "Ok ok" "yeah" "They give u the price already" to which the UC responded "2,500 last time said it go down if I grab 2 more just lmk". The Target Number responded "Fr." Case agents understood "Fr" to mean "for real" as if the Target Number was confused by the price of $2,500 for one pound of methamphetamine. The UC then responded "*3,500 w other dude but was high u said $3350 u come down for the 2?" The Target Number responded back with "Ok ok sound better" to which the UC replied "Haha ight bro." The UC later wrote "Ima be up there next week my car ready so lmk if that works and final ticket on the 2," to which the Target Number responded, "Yeah Just let me know when u here." On November 11, 2024, the UC sent a message to the Target Number that read "Ima be up there tomorrow if got those ready" and the Target Number responded "U gona need 2." The UC responded "Ya". The Target Number replied, "2 pounds right" and the UC wrote "Ya bro."

30.     Based upon these messages, case agents believe that the UC arranged to purchase two pounds of crystal methamphetamine from the user of the Target Number. This transaction has not yet occurred.

31.     On November 15, 2024, the Honorable Stephen C. Dries, United States Magistrate Judge in the Eastern District of Wisconsin, authorized a warrant for the electronic surveillance of telephone number 414-531-4582 (Target Number).

32.     On November 20, 2024, the UC again had contact with the Target Number as case agents attempted to purchase two pounds of methamphetamine from the holder of the Target Number. The UC sent a text message to the Target Number that said, "Wtw bro" to which the Target number responded with "Wat u need" "U still need tha 2" "Let me know so i can have it ready." Case agents understood this to mean that the holder of the Target Phone wanted to make

sure the UC still needed two pounds of methamphetamine.  The UC responded to these messages with "Ya what time u think."  The UC and the Target Number exchanged several more text messages related to coordinating the exchange.  Ultimately this transaction never transpired, and the holder of the Target Number told the UC through text message, "Brow aint trying to have u wating" "Shit when bad."  The Target Number further stated, "If u want live the money so u dont take it back" "Ill have the shit ready tomorrow" "For shure."  Case agents understood this communication to mean that the holder of the Target Number could not get the agreed upon two pounds of methamphetamine and was informing the UC they could have it ready the following day.

33.     Case agents conducted telephone toll analysis on telephone number 414-531-4582 (Target Number) and observed the most frequently contacted number for the Target Number was telephone number 262-341-8435.  Through a search of law enforcement databases case agents were able to associate telephone number 262-341-8435 to Erica VELAZQUEZ (DOB: XX/XX/1987).  According to the Wisconsin Department of Transportation, VELAZQUEZ has a registered address of 2824 Crossridge Drive, Racine, WI.  On December 5, 2024, case agents received an administrative subpoena return from T-Mobile on telephone number 262-341-8435 and according to T-Mobile records the subscriber to this telephone number is Erica VELAZQUEZ with an address of 2824 Crossridge Drive, Racine, WI.

34.     On the evening of December 3, 2024, case agents were electronically monitoring the location of the Target Number and received a ping from US Cellular showing that the Target Number was in the area of 2824 Crossridge Drive, Racine, WI.  This address happens to be a apartment complex made up of multiple buildings connected by multiple large open parking lots. Upon receiving the ping from US Cellular showing the Target Number was in this area case agents

then conducted physical surveillance at 2824 Crossridge Drive and took note of multiple license plates in the parking lot closest to 2824 Crossridge Drive. Case agents observed one of these plates to be Wisconsin plate AML-1431, affixed to a red Ford Explorer (Hereinafter, **Subject Vehicle**). According to the Wisconsin Department of Transportation, AML-1431 is registered to a 2012 red Ford Explorer under the name of Angelina RODRIGUEZ-Villalobos with an address of 9019 W. Cleveland Ave, West Allis, WI. Through this investigation case agents are familiar with the last name of RODRIGUEZ-Villalobos and understand that targets of this investigation have familial connections to individuals with the last name of RODRIGUEZ-Villalobos.

35.     On the morning of December 4, 2024, case agents were again electronically monitoring the location of the Target Number and received a ping from US Cellular showing that the Target Number was in the area of N. 24th Street and W. Hopkins Avenue on the north side of the City of Milwaukee. Approximately one hour after obtaining this ping case agents spot checked the parking lot in front of 2824 Crossridge Drive and observed that the **Subject Vehicle** was no longer parked in this parking lot.

36.     At approximately 3:47 a.m. on the morning of December 5, 2024, case agents obtained a ping on the Target Number from US Cellular that placed the Target Number in the area of 2824 Crossridge Drive, Racine, WI. At approximately 4:30 a.m. on this same morning case agents established surveillance in the parking lot of 2824 Crossridge Drive and observed the **Subject Vehicle** parked in the parking lot. At approximately 5:10 a.m. case agents observed an unidentified subject exit the front door of 2824 Crossridge Drive and enter the driver's seat of the **Subject Vehicle**. Case agents then surveilled the Target Vehicle as it departed the area and ultimately arrived at 3660 N. 35th Street, Milwaukee, WI, and entered the parking lot of Pak Technologies. At no time was the **Subject Vehicle** out of view of case agents from the time it left

the parking lot at 2824 Crossridge Drive until it arrived at Pak Technologies. At approximately 6:01 a.m. on this same morning case agents obtained another ping from US Cellular for the location of the Target Number. This ping placed the Target Number in the area of N. 30th Street and Capitol Drive on the north side of Milwaukee and the ping had an accuracy radius of 872 Meters. According to Google Maps Pak Technology would be inside the radius of the ping for the Target Number, therefore case agents believe the holder of the Target Number is operating the **Subject Vehicle**.

37.    Based on historical ping information case agents believed that the holder of the Target Number worked in this area regularly and would likely leave work around 4:00 p.m. On December 5, 2024, at approximately 4:00 p.m. case agents established surveillance in the area of 3660 N. 35th Street in anticipation that the **Subject Vehicle** would depart the area around this time. At approximately 4:10 p.m. case agents observed the **Subject Vehicle** departing the parking lot of Pak Technologies and heading south on N. 35th Street. As the **Subject Vehicle** turned onto N. 35th from Pak Technologies SA Tyler Owenby observed the **Subject Vehicle** to be occupied one time by a male driver wearing a high visibility green shirt or jacket. The **Subject Vehicle** was surveilled to 2500 W. Orchard Street, Milwaukee, WI, where it was observed parking in front of the residence. SA Matt Kilby observed a Hispanic male wearing a high visibility green shirt or jacket, matching the description of Jose M RODRIGUEZ exit the driver's seat of the **Subject Vehicle** and approach the front door of 2500 W. Orchard. SA Kilby's view was obstructed, however, moments later SA Owenby observed the **Subject Vehicle** exit the area. As the vehicle departed SA Owenby could clearly see the **Subject Vehicle** was still occupied by the same male driver wearing a high visibility green shirt or jacket. Ultimately surveillance units lost sight of the

**Subject Vehicle** and terminated surveillance as the **Subject Vehicle** traveled south of S. 27ᵗʰ Street near Howard Ave in the city of Milwaukee.

38.     Based on the physical surveillance, electronic surveillance, and communication between the UC agent and the Target Number, I believe that Jose RODRIGUEZ is using the **Subject Vehicle** in connection with drug trafficking. Based upon my own observations, I know that the **Subject Vehicle** is presently within the Eastern District of Wisconsin.

## TECHNICAL BACKGROUND

39.     Law enforcement therefore believes, based on the foregoing, that the **Subject Vehicle** is presently within the Eastern District of Wisconsin.

40.     In order to track the movement of the **Subject Vehicle** effectively and to decrease the chance of detection, law enforcement seeks authorization to place a tracking device on the **Subject Vehicle** while it is in the Eastern District of Wisconsin. Because the **Subject Vehicle** could be parked in a private driveway/parking lot and on other private property, it may be necessary to enter onto private property and/or move the **Subject Vehicle** to effect the installation, repair, replacement, and removal of the tracking device. Further, based on the surveillance conducted to date and described above, I expect to find the **Subject Vehicle** in the Eastern District of Wisconsin, most likely at the above mentioned address of 2824 Crossridge Drive, Racine, Wisconsin.

41.     To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. Based on my training and experience, individuals engaged in drug trafficking and other criminal conduct are often armed.

Further, I know that the address of 2824 Crossridge Drive, Racine Wisconsin, where I have repeatedly observed the **Subject Vehicle** parked, is a parking lot for a multi-building apartment complex with neighboring buildings nearby. The parking area is therefore both open to view and surrounded by potential viewers in that it is easily visible to neighboring buildings and tenants, increasing the risk of detection. To ensure the safety of executing officer(s), and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking devices during both daytime and nighttime hours. Daytime installation would likely make it harder for law enforcement to install the tracking devices without being detected by the suspect or his associates, which could reveal the existence of the investigation and/or precipitate a violent confrontation.

42.    It is further requested that in the event that Subject Vehicle travels outside the territorial jurisdiction of the court, the order authorize the continued monitoring of the electronic tracking devices in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

43.    Law enforcement also requests permission to enter the Subject Vehicle to replace and/or install the tracking device(s). While law enforcement will make reasonable efforts to install each of the tracking devices without entering the Subject Vehicle (by, for example, installing the tracking device on the bottom of the Subject Vehicle, it is possible that installation in such a location will prove impracticable, such that law enforcement will need to secret the tracking device(s) inside the Subject Vehicle.

44.    I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Drug Enforcement Administration, federally deputized state

and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

45.     In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## CONCLUSION

46.     Based on all the forgoing, I submit that there is probable cause to believe that RODRIGUEZ is engaged in violations of Title 21 U.S.C. §§ 841(a)(1) (distribution and possession with the intent to distribute controlled substances), 846 (conspiracy to distribute and possess with the intent to distribute controlled substances), and 843(b) (illegal use of a communication facility). I further believe that evidence of these crimes is likely to be found by tracking the location of the **Subject Vehicle**. Such tracking is likely to reveal additional "stash" locations, sources of supply, drug customers, and potential co-conspirators by revealing the places RODRIGUEZ frequents.

47.     Therefore, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes law enforcement, including but not limited to your affiant and technicians assisting in the above-described investigation, to install a tracking device on the **Subject Vehicle** within the Eastern District of Wisconsin within 10 days of the issuance of the proposed warrant; to maintain, repair, and/or

replace the tracking device as necessary, and to remove the tracking device from the **Subject Vehicle** after the use of the tracking device has ended: to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter the outside property of and/or move the **Subject Vehicle** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Wisconsin.

48.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).